SAMUEL ROSENBAUM, GUARDIAN, *vs.* THE HARTFORD NEWS COMPANY (SAMUEL ROSENBAUM, GUARDIAN, APPEAL FROM COMPENSATION COMMISSIONER).

First Judicial District, Hartford, January Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

An employee whose injury, arising out of and in the course of his employment, is due primarily to the wrongdoing of a third person, may voluntarily settle his claim for damages with the tort-feasor; but in that event his employer is entitled to ratify the settlement and to have the amount so paid applied in discharge or reduction, as the case may be, of his liability for compensation. This principle results from the legal relation of the parties created by Chapter 288, § 2, of the Public Acts of 1915, amending § 6 of our Workmen's Compensation Act, although the statute in stating the rule refers in terms only to the apportionment and application of compulsory payments made by the tort-feasor after his legal liability has been established by a judgment.

Argued January 3d—decided March 12th, 1918.

APPEAL by the plaintiff from a finding of the Compensation Commissioner of the first district in favor of the defendant, taken to and tried by the Superior Court in

Hartford County, *Gager, J.;* the court affirmed the action of the Commissioner and dismissed the appeal, and from this judgment the plaintiff appealed. *No error.*

On March 12th, 1916, the claimant's minor ward, David Rosenbaum, sustained an injury, arising out of and in the course of his employment, "under circumstances apparently creating in the New York, New Haven and Hartford Railroad Company a legal liability to pay damages in respect thereto." The injury resulted in an amputation of the right leg at the knee joint.

On June 24th, 1916, the claimant and the railroad company entered into a written agreement, whereby the claimant, in consideration of the payment and receipt of $3,000, released the railroad company from all rights of actions, claims, or demands, for or by reason of any injuries sustained by David Rosenbaum at the station at Hartford on March 12th, 1916.

As a further consideration for this release the railroad company agreed, in substance, that if the Supreme Court of the State of Connecticut should hold that David Rosenbaum was not entitled to compensation under the Workmen's Compensation Act, it would pay to Rosenbaum the further sum of $1,092 and expenses, that being the amount of compensation payable under the statute for an injury resulting in loss of leg at the knee joint.

The Commissioner held that the right of the claimant to compensation under the Act had been satisfied by the payment made by the railroad company to the claimant of a sum in excess of the statutory compensation, and the Superior Court sustained the action of the Commissioner and dismissed the appeal.

*Madison G. Gonterman,* for the appellant (plaintiff).

*Charles Welles Gross,* for the appellee (defendant).

BEACH, J.   The question is whether Rosenbaum is entitled to his statutory compensation, notwithstanding the fact that he has already received, through his guardian, an amount in excess thereof as the consideration for the release of a claimed right of action against the railroad company, arising out of the same injury for which compensation is demanded.

That depends on the construction to be put on § 2 of the Workmen's Compensation Act of 1915 (Public Acts of 1915, Chap. 288), relating to injuries arising out of and in the course of his employment, "under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto."

The Commissioner has found that the injury in question was sustained under circumstances "apparently" creating such a liability in the New York, New Haven and Hartford Railroad Company, and that finding, taken in connection with the contract of release and settlement, is sufficient for the purposes of this appeal. The written contract does not, of course, establish the legal liability of the railroad company, nor can that be done in a proceeding to which the railroad company is not a party.   But so far as the claimant is concerned, the contract assumes the existence of such a liability, and in this proceeding between the injured employee and the employer, the claimant cannot equitably be permitted to take any other position than that the $3,000 was received in partial satisfaction of a valid claim for damages.

Section 2 provides, in substance, that an employee who sustains an injury arising out of and in the course of his employment, by reason of the fault or neglect of a third party, may claim compensation under the Act without prejudice to his common-law right to sue the tort-feasor; that an employer who has paid, or by award become obligated to pay, compensation, may sue the

tort-feasor in his own name, with a view to reimbursement; and that, if either sue, the other is entitled to notice and an opportunity to join in the action. Then follow the provisions for the apportionment of damages between the injured employee and the employer, which supply the principles on which this case must be decided: "In the event that such employer and employee shall join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the claim of the employer shall take precedence over that of the injured employee, and if the damages shall not be sufficient, or shall be only sufficient to reimburse him for the compensation which he has paid, or by award has become obligated to pay, with a reasonable allowance for an attorney's fee, to be fixed by the court, and his costs, such damages shall be assessed in his favor; but if the damages shall be more than sufficient to reimburse him, damages shall be assessed in his favor sufficient to reimburse him for the money he has paid, with a reasonable allowance for an attorney's fee, to be fixed by the court, and his costs, the excess shall be assessed in favor of the injured employee."

There is nothing in § 2 which requires the injured employee to claim compensation before he sues the tort-feasor, or which prevents the employer from joining in such an action before he has by award become obligated to pay compensation. The injured employee may sue the tort-feasor, and the employer may join in the action before compensation is claimed or awarded, and if, in such a case, damages are recovered in excess of a reasonable attorney's fee for the employer, such excess shall, as the Act directs, "be assessed in favor of the injured employee," with the necessary result that the employer is discharged, *pro tanto*, from his inchoate liability to pay compensation. So if the employer has

become obligated to pay compensation, but has not paid it, and the damages recovered are greater than the amount of compensation the employer has become obligated to pay, together with a reasonable attorney fee, the entire excess is directed to be assessed in favor of the injured employee, with the consequence of discharging the employer from his ascertained liability under the award.

So far as damages paid under compulsion of a judgment are concerned, § 2 plainly makes the tort-feasor primarily liable for the injury, and either reimburses or discharges the employer out of the first moneys available for the payment of damages.

True, the statute states only the rule for the apportionment and application of compulsory payments made by the tort-feasor after his legal liability has been ascertained by a judgment, but the rule is based on the legal relation of the parties as defined by the Act, namely, that the tort-feasor is primarily liable, and that, as between the employee and employer, the latter is entitled to precedence for the purpose of reimbursement or discharge.

The legal relation of the parties, being thus ascertained, furnishes the principle for the apportionment and application of all payments made by the tort-feasor for the purpose of obtaining a release from his primary liability. Suppose, for example, that a joint action, brought before any award of compensation, is settled before trial by the payment directly to the injured employee of a sum greater than the amount of the employer's attorney fee. Evidently the employer is discharged to the same extent and upon the same principle as if the payment had been made after a judgment for a like sum had been rendered. And the same must be true of a settlement made before suit is brought, whether the employer takes part in the negotiations or

not. If the settlement is made behind the back of the employer, he will not be bound by it. But, if it is for his advantage to do so, he must be permitted to ratify it, and to assert his right, arising out of the legal position assigned to him by § 2, to be discharged *pro tanto* by the settlement. Otherwise, the injured employee might first settle with the tort-feasor for a sum in excess of his statutory compensation, on the correct basis that the tort-feasor was primarily liable for the whole damages, and then recover his statutory compensation also.

It is argued that the employer's right to reimbursement does not arise until he has paid, or by award become obligated to pay, compensation, and then not until the legal liability of the tort-feasor has been ascertained in an action at law. But, as already pointed out, the Act contemplates, not only the reimbursement of an employer who had paid compensation, but also his discharge from an ascertained or inchoate obligation to pay compensation, by the payment of damages directly to the injured employee. And since the Act expressly provides that the claim of the employer shall take precedence over that of the employee, the employer is entitled to have the first moneys so paid to the employee applied to the discharge of his obligation.

The only material question which the language of the statute does not answer, is whether this principle applies to voluntary payments made directly to the injured employee before the legal liability of the tort-feasor has been ascertained by judgment, and for the reasons given we have answered that question in the affirmative.

There is no error.

In this opinion the other judges concurred.