Plaintiff was employed by T. Miller Sons, who was insured by The Employers' Liability Assurance Corporation, Ltd., as a corporation engaged in the building of houses in the Parish of Calcasieu, some 12 miles southwest of the City of Lake Charles. The employer furnished transportation to and from the work, and on January 26, 1944, at about 6:30 A.M., while this employee was being transported to his employment, in a truck owned by the employer and *Page 443 
operated by another employee, a collision occurred between said truck and a U.S. Army truck being operated by a member of the U.S. Army forces. As a result of this collision, the employee, plaintiff herein, suffered serious and permanent injuries, to wit: a compound comminuted fracture between the wrist and elbow of his right arm, and a compound comminuted fracture of his left leg between the hip and knee, resulting in total and permanent disability to perform the work he was doing at the time of the accident, or any other reasonable work. Subsequent to the injury, the insurer paid workmen's compensation at the maximum rate of $20.00 per week, and provided medical expense up to the maximum of $250.00.
Meanwhile, there was introduced and passed a private claim bill under which plaintiff received the sum, from the United States government, of $6,672.00. At that time he had received $250.00 as medical expenses, and 114 weeks of compensation, that is, $2,280.00 from the insurer of his employer. The claim from the federal government, at its inception, had been requested in the amount of $10,000.00, but after consideration by the Claims Committee of the House, it was reduced to the amount awarded, to wit, $6,672.00, and as stated in the report of the House Claims Committee, the medical expenses in the amount of $1,922.00 were reduced by the sum of $250.00, already received, to $1,672.00, and $5,000.00 was allowed for personal injury and loss of earnings.
On trial of the case, the injuries of the plaintiff were clearly established and the trial court reached the conclusion, which is not in dispute, that the plaintiff was totally and permanently disabled as the result of the accident. It was also established by the evidence that the accident was caused by the negligence of the driver of the army truck, and undoubtedly if such driver had been operating his truck for a third person, subject to suit, under the provisions of Section 7 of the Workmen's Compensation Act, Act No. 20 of 1914, as amended by Act No. 247 of 1920, which reads as follows:
"1. When an injury for which compensation is payable under this Act shall have been sustained under circumstances creating in some other person (in this Section referred to as third person) than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Act; and the payment or award of compensation hereunder shall not affect the claim or right of action of such injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for such injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for such injury.
"2. Any employer having paid or having become obligated to pay compensation under the provisions of this Act may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent; provided, that if either such employee or his dependent, or such employer, shall bring suit against such third person, he shall forthwith notify the other in writing of such fact and of the name of the Court in which such suit is filed, and such other may intervene as party plaintiff in such suit.
"3. In the event that such employer or such employee or his dependent shall become party plaintiff in such suit and any damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damage shall not be sufficient or shall only be sufficient to reimburse the employer for the compensation which he has actually paid, with a reasonable attorney's fee, to be fixed by the Court rendering the judgment, and his costs, such damages shall be assessed solely in his favor; but if the damages shall be more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent; and upon payment thereof to the employee or his dependent the liability of the employer for compensation shall cease for such part of the compensation due hereunder, computed at six per cent per annum., as shall be satisfied by such payment. *Page 444 
"4. No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the other unless assented to by him."
both the employee and the employer (or the employer's insurer) would have had a cause of action against said third person.
In the lower court, as well as before this court, the defendant claims that said award was an admission of liability and should operate as an offset against the compensation heretofore paid, which compensation was stopped at the time of the award. On the other hand, the plaintiff contends that said award was merely a "donation" from the federal government based on a moral obligation and that said award was above and beyond all his rights heretofore existing.
The District Court agreed with the contention of the plaintiff and granted judgment for compensation for total and permanent disability beyond the 114 weeks heretofore paid for a period of 400 weeks, stating, in effect, as brought out by counsel for plaintiff, that the federal award was merely a donation.
The defendant has appealed on the basis, as brought out in the trial, that the amount received from the federal government should be used as an offset against compensation owed by it under the Workmen's Compensation Act, and that by using said offset, it is clear that no further compensation is due for the reason that the offset is beyond the amount that could possibly be recovered.
The question presented is the interpretation of Section 7 of the Act quoted supra, particularly the meaning of the phrase of "A legal liability" as contained in paragraph 1 of the said section.
In the case of Grand Rapids Bedding Co. v. Grand Rapids Furniture Temple Co., 218 Mich. 486, 188 N.W. 538, 539, the Supreme Court of Michigan had under consideration Section 5468, C.L.1915, which reads as follows, "Where the injury for which compensation is payable under this act was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof * * *", a statute very similar to ours, and had this to say regarding the phrase "legal liability": "This 'legal liability' arises where such other person is guilty of negligence, and unless a legalliability for negligence is made out the plaintiff cannot recover. [Citing several cases.]" (Italics ours.)
In Sweat v. Allen, 145 Fla. 733, 200 So. 348, 352, a case wherein a provision of the Florida Compensation Statute somewhat similar to ours was involved the Supreme Court of that State held: "In any event, the present claim cannot be defeated upon this ground, for the language of section 39 (a) necessarily implies that the third person must be legally 'liable in damages', and that has not been established, nor can it be, in this proceeding. A third party's settlement with the workman cannot be taken as an acknowledgment by it of its legal liability; the release and settlement 'is not an adjudication of the legal liability of the defendant (third party), nor even evidence' thereof. United States Fidelity Guaranty Co. v. New York, N.H. H. R. Co., 101 Conn. 200, 125 A. 875, 877."
The defendant strenuously contends that the issue in this case has been decided in its favor by the case of Smith v. McDonough et al., 29 So.2d 818, a decision by the Court of Appeal, Orleans Circuit, of this State, wherein it is held that, under Paragraph 3 of Section 7, where an employee was injured under circumstances creating liability against a third party and compromised his claim against such party without knowledge of his employer, the employer was entitled to credit the amount of the compromise upon the larger amount awarded the employee in a subsequent suit against the employer by the employee for workmen's compensation. In the Smith v. McDonough case, the court cited the case of Sweat v. Allen, supra, and quoted part of the language from that decision in support of its conclusion, and from the language quoted there appears to be a basis for the conclusion in the Smith v. McDonough suit. However, on reading the Sweat v. Allen case, it is noted that the court quoted, with approval, the extract hereinabove given in the case of United States Fidelity Guaranty Co., supra, which in our opinion is in *Page 445 
direct conflict to the holding in the Orleans Circuit Court Decision. It is our opinion, therefore, that both the Florida and Connecticut cases cited hereinabove do not furnish a basis for the decision reached in the case of Smith v. McDonough.
In the case of United States Fidelity Guaranty, supra [101 Conn. 200, 125 A. 876], the Supreme Court of Connecticut, in considering a section of the Connecticut Workmen's Compensation Statute which is almost verbatim, including the number of paragraphs, like Section 7 of our compensation law, states:
"The case before us is one where, after receipt of compensation, the employee effected a settlement of his claim without the knowledge of his employer for the legal liability of the defendant railroad for the injury for which compensation was obtained, and the employer is seeking to be reimbursed by the third party for the compensation paid by him to the injured employee.
"Action by the employer against the defendant railroad by express provision of this statute will only lie in a case 'when any injury for which compensation is payable * * * shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay the damages in respect thereto.' By necessary implication this statute gives a right of action to employee and to employer against defendant railroad for injuries legally caused by it, and denies such action when the defendant did not legally cause the injuries.
"The section not only accords to the employer an action against such third person, but it gives to him a preferential right of reimbursement of compensation paid by him in the recovery by suit or settlement by the injured employee. The 'compromise' addition to this section made in 1921, which we have already quoted, does not affect the question of liability and damage. The compromise must be assented to in order to bind the employer. His right to adjudicate the questions of liability and damage remain despite the compromise by the express terms of this addition to the statute. Defendant's settlement with the employee cannot be taken as an acknowledgment by it of its legal liability. The law favors a settlement of disputes; a defendant might be ready to pay a substantial sum rather than to litigate its liability. The mere fact that the defendant has secured a release by the employee from liability for injuries to him or paid him damages is not an adjudication of the legal liability of the defendant, nor even evidence of legal liability."
In the said decision, the court further states: "Renner v. Model Laundry [Cleaning Dyeing] Co., 191 Iowa 1288, 184 N.W. 611, presents a case like the one at bar and one under a compensation act similar to our own in the particular providing for a right of action against the third party for injury to an employee under the circumstances creating legal liability. It was held in this case that the employer was not entitled to the benefit of the payment by way of settlement with the employee until the legal liability of the third party had been judicially established or assented to by the third party. Id.; Book v. City of Henderson, 176 Ky. 785, 197 S.W. 449."
[1] Thus it can be said that the phrase "a legal liability to pay damages" as used in Section 7 means a liability which must be litigated, determined and enforceable.
In this case, the third person was the United States Government, which was, at the time of the accident, not subject to suit on tort claims, and consequently no suit was ever or could be filed, and the only relief the plaintiff and/or the defendant could obtain was the introduction and passage of a claim bill, which, in our case, was done for and on behalf of the plaintiff herein, as set forth above.
[2] The award made by Congress in this case was made without any anticipation that the employer or its insurer would profit thereby. It seems clear from the committee report, especially with reference to medical expenses, that the award was made subject to benefits which the employee would receive under our existing law. It will be noted that the medical expenses, in the committee, were reduced by $250.00, because the employee had received that much from his insurer. On that item it would seem to us that if the government *Page 446 
was going to assume full responsibility for the accident, they would have added this item of $250.00 to the award for the benefit of the insurer, who had previously paid it. Similarly, with reference to the compensation, it is apparent that the Committee was informed of the provisions of our compensation act at the time of the passage of the Act, knew that the claimant had received 114 weeks of compensation, and under our compensation act was entitled to 256 additional weeks, and yet no mention of that is made in the report or in the act. These facts convince us that the payment by the United States government is in the nature of an award above and beyond any relief granted to the plaintiff-employee by his employer or its insurer under our existing laws. It is unfortunate that the Committee did not insert in its Act the words bringing out the fact that its intention was to compensate the plaintiff in that manner, but the fact remains, from the committee report, and from the circumstances, that the employer or its liability employment insurer was not considered in the passage of this Act, and certainly the facts show that the employee suffered injury beyond the scope of the Workmen's Compensation Act and that had his action been under our general tort law against a private individual, he would have recovered damages considerably above the amount granted him by the Compensation Act.
There is no question that, at the time of the accident, the United States could not be sued on tort claims and therefore there was no "legal liability to pay damages" which could be litigated, determined and enforced, the very basis of Section 7 consisting of its four paragraphs; and conceding that the United States could be sued in tort, it is the opinion of the writer of this opinion that defendant's contention would not be well taken in that, under the decisions cited in this opinion, the Smith case, supra, there was no adjudication of the legal liability of the United States.
Under the decisions cited herein, including the Smith case, and Section 7 of the Louisiana compensation act, such right of action as the defendant might have against the United States to establish the legal liability of the United States and have its claim adjusted, is preserved.
[3] The judgment of the lower court fixed the fees of the attorney representing the plaintiff at 20% of the net amount to be collected on the judgment, but failed to stipulate that the said fee shall not exceed the sum of $1,000.00. The judgment will be amended accordingly.
For these reasons assigned, the judgment appealed from is amended by limiting the fee of the attorney for plaintiff to the sum of One Thousand Dollars, and as thus amended, the judgment is affirmed.